IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MARK KAVAKICH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-1109 |
| NORTH FRANKLIN TOWNSHIP, | ) | Judge Gary L. Lancaster |
| DONALD HAZLETT, MICHAEL QUINN, RICHARD HORNER, JERRY CAVANAUGH, WILLIAM LOAR, and DENNIS M. MAKEL, | ) | Magistrate Judge Amy Reynolds Hay |
| Defendants. | ) | |

## MEMORANDUM OPINION

HAY, Magistrate Judge.

Background

In this civil rights action[1] brought pursuant to 42 U.S.C. § 1983, the Court considers the Defendants' Motion for Protective Order (Doc.105 ). Asserting attorney-client and work product privileges, the Defendants seek to preclude the Plaintiff's use of five letters prepared by the former North Franklin Township Solicitor in connection with a separate 2006 legal proceeding

---

[1] The Plaintiff, Mark Kavakich, ("Kavakich" or "the Plaintiff") claims that his constitutional rights were violated when he was suspended from his job as the Township's Chief of Police without due process. He named as Defendants North Franklin Township, three Township Commissioners, Donald Hazlett ("Hazlett"), Michael Quinn ("Quinn"), and William Loar ("Loar"), two subordinate police officers who allegedly supplied information leading to his suspension, Richard Horner and Jerry Cavanaugh, and the former Township Solicitor, Dennis Makel ("Makel"). Loar and Makel are no longer Defendants.

involving Kavakich.[2] The Court also addresses a Motion to Withhold Decision filed by the Plaintiff (Doc. 117) asking the Court to delay considering the Defendants' Motion until he is able to conduct discovery limited to issues bearing on waiver of the asserted privileges. Whether documents are subject to privilege is committed to the District Court's discretion. Rossi v. Standard Roofing, Inc., 156 F.3d 452, 477 n.16 (3d Cir.1998).

Having carefully considered the parties' arguments, the Court will deny the Defendants' Motion for Protective Order, as they have failed to establish non-waiver of the attorney client privilege. In addition, the facts demonstrate that the work product privilege should be deemed to have been waived. The Court will, therefore, deny the Plaintiff's Motion as moot.

Analysis

As expressed in Fed. R. Evid. 501, the attorney-client privilege is grounded in the common law.[3] See Upjohn Co. v. United States., 449 U.S. 383, 389 (1981). The privilege applies where:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal

---

[2] The Plaintiff filed an affidavit and testified in his deposition that one - possibly two - of the letters were given to him by Quinn, and that the remaining correspondence was given to him directly by Makel. The Defendants have submitted Makel's affidavit to the effect that he did not provide or authorize anyone else to provide Kavakich with the letters. They have also submitted to the Court, under seal, the letters at issue.

[3] This Rule provides, in pertinent part, that unless the Constitution, Congress, or the Supreme Court has provided otherwise, "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience . . . . "

> services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir.1994).

The privilege belongs to the client, which may be a government entity. See In re County of Erie, 473 F.3d 413, 418 (2d Cir. 2007). "[B]ecause its benefits are, at best 'indirect and speculative,' [the privilege] must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" In re Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 802 (3d Cir. 1979) (internal citation omitted.).

"In order to establish the applicability of the attorney-client privilege to a given communication, the party asserting the privilege must affirmatively demonstrate non-waiver." United States. v. Zolin, 809 F.2d 1411, 1415 (9th Cir. 1987), overruled on other grounds by United States v. Jose, 131 F.3d 1325 (9th Cir. 1997); see also United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982) (citing United States v. Bump, 605 F.2d 548, 551 (10th Cir.1979)); United States v. Stern, 511 F.2d 1364, 1367 (2d Cir.1975); In re Horowitz, 482 F.2d 72, 81-82 (2d Cir.1973); Kraus Indus, Inc. v. Moore, Civ. No. 06-542, 2008 WL 4206059 at *4 (W.D. Pa. Feb. 11, 2008); In re Nat'l Med. Imaging, L.L.C., No. 05-12714, 2005 WL 3299712 at *3 (Bankr. E.D. Pa. Oct. 31, 2005).

In an attempt to negate waiver, the Defendants have filed an affidavit executed by Makel in which he avers that he did not give the letters to Kavakich, and did not authorize any one else to release them. (Doc. 115 at 2). He also states that the Board of Supervisors never authorized disclosure of the documents on behalf of the Township. This affidavit - the only evidence offered by the Defendants with respect to waiver - says nothing about what Township officials

3

may have disclosed, and does not provide a basis for Makel's conclusory statement about what these Defendants were authorized to disclose. Especially considering Kavakich's own affidavit, the Defendants have not eliminated the possibility that disclosure by one or more Commissioners amounted to express or implied waiver of the attorney-client privilege.

The Defendants' failure to establish non-waiver is compounded by their failure to treat the letters as though they were privileged. This failure alone is sufficient to defeat both privileges.[4] The Defendants do not offer any reasonable explanation for their failure to assert privilege when they realized, months before the Motion for Protective Order was filed on October 29, 2008, that the letters were in Kavakich's possession. Kavakich notified the Defendants in April 2008 that he had two of these letters when he listed them in his Rule 26(a) disclosure. The Defendants do not allege that they did anything in response to this disclosure to ensure the confidentiality of these letters or to prevent Kavakich from accessing additional "privileged" documents. Defendants were aware, at least from August 14, 2008, the date Kavakich was deposed in a state case,[5] that he had access to all five letters. At the deposition, Attorney David R. Johnson, who also represents the Defendants in this matter, questioned Kavakich regarding how he obtained the letters. After Kavakich testified that he received them from Quinn and/or Makel, Johnson asked that the letters be marked as deposition exhibits. (See

---

[4]There is no question that each of the five letters contained attorney work product. Because the Court's waiver analysis applies with equal force to the work product privilege, the Court does not discuss that privilege separately. See In re Grand Jury (FMC), 604 F.2d 798, 803 (3d Cir. 1979) (stating that "two privileges substantially overlap."). Because the facts establish waiver of the work product privilege, it is not necessary to analyze whether the Defendants bear the burden of establish non-waiver, or the Plaintiff is obligated to make an affirmative showing.

[5]This case, captioned Kavakich v. Chavla, Civ. Case No. 2004-2995, in the Court of Common Pleas of Washington County, named, among others, North Franklin Township and Hazlett as Defendants.

4

Doc. 110-2). At no time during the deposition did Johnson assert that these letters were confidential or subject to privilege.

The Defendants argue that an assertion of privilege was unnecessary given that Kavakich produced the letters at his own deposition. They contend that because Kavakich already had the letters, nothing that took place at the deposition can fairly be characterized as disclosure. Therefore, they say, the Defendants did nothing to compromise their right to assert later that the letters are privileged. The Court does not, however, rest its ruling on disclosure. Instead, the Court's waiver analysis is rooted in the fact that even when they learned that Kavakich had two of the letters, the Defendants did not attempt to limit Kavakich's access to what they now contend are privileged letters. The Defendants do not offer an explanation for their delay.

The decision in <u>Chase v. City of Portsmouth</u>, 236 F.R.D. 263 (E.D. Va. 2006) addresses the issue of waiver in a substantially similar situation. There, the Plaintiff, challenging action taken by the Portsmouth City Council, sought to compel production of a letter written to the Council by the City Attorney. The Defendants refused to produce the letter, citing attorney-client privilege. The Plaintiffs argued that the privilege did not apply because a member of Council had discussed the contents of the letter in a public meeting. The Court, assessing whether the attorney-client privilege had been waived, did not focus on the disclosure, but on the Defendants' response to the Council member's statements:

> While the parties have frequently addressed the waiver aspect of this disclosure, and specifically whether [the Councilman]'s actions can serve to waive the privilege for the entire City, the Court is bothered by another aspect of this event - not one person objected to [the] comments. . . "[I]f a client wishes to preserve the privilege . . . , he must take some affirmative

5

> action to preserve confidentiality . . . ." An objection would have been a reasonable step to ensure confidentiality. Absent any such attempt, the Court cannot allow the defendants to shield this letter under the doctrine of attorney-client privilege.[6]

Id. at 268-69 (internal citations omitted).

The Court is also guided by case law involving waiver of privilege with respect to documents disclosed involuntarily. In U.S. v. de la Jara, 973 F.2d 746 (9th Cir. 1992), for example, the Court wrote:

> [T]he attorney-client privilege may be waived by implication, even when the disclosure was . . . involuntary. When the disclosure is involuntary, we will find the privilege preserved if the privilege holder has made efforts "reasonably designed" to protect and preserve the privilege. Conversely, we will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.

Id. at 749- 50 (internal citations omitted). The Court found that the privilege was waived where the asserting party waited six months to attempt to recover a seized document. "As a result of his failure to act, . . . he allowed the 'mantle of confidentiality which once protected the document[ ]' to be 'irretrievably breached, thereby waiving his privilege.'" Id. (quoting Permian Corp. v. United States, 665 F.2d 662, 665 (D.C. Cir. 1979)).

Conclusion

Based on the law and the facts, the Court finds that the Defendants have failed to establish non-waiver of the attorney-client privilege, and have not demonstrated that they are

---

[6]Although the Court addressed the work product privilege, it limited its discussion to whether the Councilman's disclosure alone constituted waiver, concluding that it did not. The Court did not discuss whether the Defendants' failure to act amounted or contributed to a waiver.

entitled to invoke the work product doctrine. Consequently, the Defendants' Motion for Protective Order (Doc. 105) will be denied. The Plaintiff's Motion to Withhold Decision (Doc. 117) will be denied as moot. An appropriate Order follows.

Dated: 9 March, 2009

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

cc: All counsel of record via CM-ECF